1
2
3
4
5
6                    UNITED STATES DISTRICT COURT

7                         DISTRICT OF NEVADA

8                              * * * * *

9    KERRIE L. SHAFFNER-HUCKABY, an      )
     individual,                         )
10                                        )          3:08-cv-00594-LRH-RAM
                          Plaintiff,      )
11                                        )
     v.                                   )
12                                        )          ORDER
     RALEY'S, a California Corporation,   )
13                                        )
                          Defendant.      )
14   _____ )

15          Before the court is Defendant Raley's Motion for Summary Judgment (#22[1]).  Plaintiff

16   Kerrie L. Shaffner-Huckaby has filed an opposition (#23) to which Defendant replied (#24).

17   **I.      Facts and Procedural History**

18          This is an employment discrimination dispute arising out of Plaintiff's work as the head

19   receiving clerk in Defendant's Fallon, Nevada store.  Plaintiff began working as a clerk in the

20   Fallon store in 1996, and in December of 2006, Plaintiff applied for a receiving/dairy clerk

21   position.  The store director, Royce Garrett, selected Plaintiff for the position over two other

22   male applicants.  In April of 2007, Plaintiff received a pay increase and was promoted to

23   Receiving Head Clerk.

24          In November of 2007, Danica Palmer, the Fallon store's bookkeeper and the individual

25   responsible for entering missed time clock punches into Raley's computer system, contacted

26   Human Resources Manager Nancy Hammers and reported that Plaintiff had been misreporting

27   her time.  In particular, Palmer reported that, to avoid lost hours and pay, Plaintiff had been

28   _____

            [1]Refers to the court's docket entry number.

coming in late and not punching the time clock.

Because Defendant's management did not have any evidence other than Palmer's statements to establish that Plaintiff was misreporting her start time, management began requiring any employee who failed to record his or her time to fill out a "missed punch form." The form requires the employee to state the hours worked and the reason for the missed punch and to sign his or her name to verify the accuracy of the information

On May 28, 2008, Palmer again contacted Hammers to report that Plaintiff continued to avoid using the time clock to punch in when she was late for work. Palmer noted in particular that Plaintiff failed to use the time clock on Mondays.

As a result of Palmer's report, Hammers asked Raley's loss prevention department to check Plaintiff's time records and the store videotapes for several previous Mondays. Security Loss Prevention Officer Larry Buck reviewed the records and videotape. Buck reported to Hammers that on Monday, May 5, 2008, Plaintiff failed to punch the time clock at the beginning of her shift and signed the missed punch log reporting a start time of 5:20 a.m. The videotape, however, indicated that Plaintiff did not actually arrive at work until 5:46 a.m. Similarly, on Monday, May 26, 2008, Plaintiff failed to punch the time clock at the beginning of her shift and signed the missed punch log reporting a start time of 5:15 a.m. The videotape, however, showed that Plaintiff did not arrive at work until 5:51 a.m. The following Monday, June 2, 2008, Plaintiff again failed to punch the time clock at the beginning of her shift and signed the missed punch log reporting a start time of 5:15 a.m. The videotape showed that Plaintiff did not arrive at work until 6:01 a.m.

On June 11, 2008, Hammers visited the Fallon store and met with Garrett, the Store Director, and Plaintiff to discuss Plaintiff's failure to accurately report her time and to suspend Plaintiff pending further review of the situation. At Hammers' request, Plaintiff executed a written statement indicating that she may have occasionally missed punches on Mondays because she is "spacey" and vendors come early on Mondays. The statement further indicates that although Plaintiff occasionally came in late, she would make up the time and that Plaintiff had been taking medication since the beginning of May.

2

1    As a result of Plaintiff's falsification of her time cards, Hammers, District Director Smith,

2    and Senior Director of Human Resources Jerry Landers, made the decision to terminate Plaintiff

3    effective June 16, 2008.

4    **II.    Legal Standard**

5    Summary judgment is appropriate only when "the pleadings, depositions, answers to

6    interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

7    genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

8    of law." Fed. R. Civ. P. 56(c).  In assessing a motion for summary judgment, the evidence,

9    together with all inferences that can reasonably be drawn therefrom, must be read in the light

10   most favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio*

11   *Corp.*, 475 U.S. 574, 587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148,

12   1154 (9th Cir. 2001).

13   The moving party bears the burden of informing the court of the basis for its motion,

14   along with evidence showing the absence of any genuine issue of material fact.  *Celotex Corp. v.*

15   *Catrett*, 477 U.S. 317, 323 (1986).  On those issues for which it bears the burden of proof, the

16   moving party must make a showing that is "sufficient for the court to hold that no reasonable

17   trier of fact could find other than for the moving party."  *Calderone v. United States*, 799 F.2d

18   254, 259 (6th Cir. 1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D.

19   Cal. 2001).

20   To successfully rebut a motion for summary judgment, the non-moving party must point

21   to facts supported by the record which demonstrate a genuine issue of material fact.  *Reese v.*

22   *Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000).  A "material fact" is a fact "that might

23   affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477

24   U.S. 242, 248 (1986).  Where reasonable minds could differ on the material facts at issue,

25   summary judgment is not appropriate.  *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983).  A

26   dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable

27   jury could return a verdict for the nonmoving party."  *Liberty Lobby*, 477 U.S. at 248.  The mere

28   existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to

3

1  establish a genuine dispute; there must be evidence on which the jury could reasonably find for

2  the plaintiff.  *See id.* at 252.

3  **III.    Discussion**

4          Plaintiff asserts the following claims for relief: (1) gender discrimination; (2)

5  "interference and retaliation" for exercising her rights under the Family and Medical Leave Act

6  ("FMLA"), 29 U.S.C. §§ 2611-2654; and (3) intentional infliction of emotional distress.

7  Defendant seeks summary judgment with regard to each of these claims.

8          **A.       Gender Discrimination**

9          Plaintiff alleges Defendant discriminated against her on the basis of her gender in

10  violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17.  Title VII

11  makes it an unlawful employment practice to "discriminate against any individual with respect to

12  his compensation, terms, conditions, or privileges of employment, because of such individual's

13  race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2.  To prevail, the plaintiff must

14  establish a prima facie case of discrimination by presenting evidence that "gives rise to an

15  inference of unlawful discrimination."  *Cordova v. State Farm Ins. Co.*, 124 F.3d 1145, 1148

16  (9th Cir. 1997); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).   A

17  plaintiff can establish a prima facie case of discrimination through either the  burden shifting

18  framework set forth in *McDonnell Douglas* or with direct or circumstantial evidence of

19  discriminatory intent.  *See Metoyer v. Chassman*, 504 F.3d 919, 931 (9th Cir. 2007) ("When

20  responding to a summary judgment motion . . . [the plaintiff] may proceed using the *McDonnell*

21  *Douglas* framework, or alternatively, may simply produce direct or circumstantial evidence

22  demonstrating that a discriminatory reason more likely than not motivated [the employer].")

23  (citation omitted) (alterations in original).

24          Under the *McDonnell Douglas* framework, the plaintiff carries the initial burden of

25  establishing a prima facie case of discrimination.  *See McDonnell Douglas*, 411 U.S. at 802.  If

26  the plaintiff succeeds in doing so, the burden shifts to the defendant to articulate a legitimate,

27  nondiscriminatory reason for its allegedly discriminatory conduct.  *Id.*  If the defendant provides

28  such a justification, the burden shifts back to the plaintiff to show that the defendant's

4

1  justification is a mere pretext for discrimination.  *Id.* at 804.

2          Here, even assuming Plaintiff has met her initial burden, the court finds that Defendant

3  has articulated legitimate, nondiscriminatory reasons for its decision to terminate Plaintiff.

4  Indeed, Plaintiff agrees that Defendant's reason for terminating her, that she failed to comply

5  with Defendant's stated time recording policy, is a legitimate, nondiscriminatory reason for her

6  termination.

7          When the defendant demonstrates a legitimate, nondiscriminatory reason for its

8  employment decision, the *McDonnell Douglas* presumption of discrimination "simply drops out

9  of the picture."  *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994) (*quoting St. Mary's*

10 *Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1994)).  The ultimate burden rests on the plaintiff to

11 demonstrate that the defendant's offered reasons are a pretext for the employer's true

12 discriminatory motive.  *Id.* at 890.  A plaintiff may demonstrate pretext "either directly by

13 persuading the court that a discriminatory reason more likely motivated the employer or

14 indirectly by showing that the employer's proffered explanation is unworthy of credence."  *Snead*

15 *v. Metro. Prop. & Cas. Ins. Co.*, 237 F. 3d 1080, 1093-94 (9th Cir. 2001) (*quoting Texas Dept.*

16 *Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).

17         In *Wallis*, the Ninth Circuit clarified the plaintiff's burden in demonstrating that the

18 defendant's justification is a pretext:

19             [I]n deciding whether an issue of fact has been created about the credibility of the
              employer's nondiscriminatory reasons, the district court must look at the evidence
20            supporting the prima facie case, as well as the other evidence offered by the plaintiff
              to rebut the employer's reasons.  And, in those cases where the prima facie case
21            consists of no more than the minimum necessary to create a presumption of
              discrimination under *McDonnell Douglas*, plaintiff has failed to raise a triable issue
22            of fact.

23 26 F.3d at 890.

24         Plaintiff has failed to meet her burden here.  Plaintiff first argues that Defendant's reason

25 for her termination is pretextual because Defendant has offered "inconsistent explanations."  In

26 particular, Plaintiff notes that Hammers testified that Plaintiff was terminated for

27 "misappropriation of time[,]" and Garrett testified that Plaintiff was terminated for falsifying

28 payroll, time, and records and for her attendance.   However, because each of these reasons

5

1   relates to Plaintiff's violation of Defendant's time policy, the court fails to see how they are

2   inconsistent.

3         Plaintiff also argues that Defendant's reason for her termination is pretextual because it is

4   not clear whether her termination was mandatory.  Plaintiff notes that Garrett has been store

5   manager at several stores and, although he has disciplined employees for payroll falsification,

6   before Plaintiff, he has never terminated an employee for this offense.  In addition, Plaintiff notes

7   that a night shift crew regularly slept on the job, and Defendant did not terminate any of the crew

8   members.

9         The court agrees with Defendant that these arguments do not raise issues of fact

10   demonstrating the pretextual nature of the reason for Plaintiff's termination.  For example,

11   Defendant's discipline of the night crew has no relationship to Defendant's enforcement of its

12   time recording policy.  In addition, contrary to Plaintiff's allegations of disparate treatment,

13   Defendant has presented evidence indicating that it terminated a male courtesy clerk for "18

14   minutes of stolen time."  (Def.'s Reply (#24), Ex. 1 at 23:11-16.)

15         Finally, Plaintiff argues the offered reason for her termination is a mere pretext for

16   discrimination because in Defendant's 140 stores, only five women have held the position of

17   receiving clerk.  This evidence alone is insufficient to create an inference of discrimination.

18   Plaintiff has failed to present any evidence suggesting that Defendant selected male applicants

19   over equally qualified female applicants or otherwise suggesting that Defendant discriminated

20   against female applicants because of their gender.

21         In sum, no evidence before the court suggests that Defendant terminated Plaintiff because

22   of her gender.  Accordingly, summary judgment with regard to Plaintiff's discrimination claim is

23   appropriate.

24         **B.**    **Interference and Retaliation**

25         The FMLA provides that an eligible employee shall be entitled to twelve workweeks of

26   leave during any twelve-month period due to the birth of a child, adoption, to care for the spouse,

27   son, daughter, or parent of the employee, or because of a serious health condition that makes the

28   employee unable to perform the function of his or her position.  29 U.S.C. § 2612.

1    Plaintiff alleges that her "conduct in taking time off to address her serious medical

2    condition was activity protected under the [FMLA]."  (Am. Compl. (#19), ¶ 34.)  She further

3    alleges that Defendant's conduct "constituted interference with and retaliation for Plaintiff

4    having engaged her rights under the [FMLA]."  (Id., ¶ 35.)

5    It is undisputed that Plaintiff neither took nor requested FMLA leave during the period

6    leading up to her termination.  In addition, Plaintiff testified that Defendant had always been

7    supportive of her requests for medical leave.  Under these circumstances, there are no issues of

8    fact concerning whether Defendant terminated Plaintiff for taking FMLA leave or whether

9    Defendant interfered with Plaintiff's right to take FMLA leave.  Accordingly, summary judgment

10   as to this claim is appropriate.

11        **C.       Intentional Infliction of Emotional Distress**

12   To establish a claim for intentional infliction of emotional distress, the plaintiff must

13   demonstrate the following: (1) "extreme and outrageous conduct with either the intention of, or

14   reckless disregard for, causing emotional distress"; (2) severe or extreme emotional distress; and

15   (3) actual or proximate causation.  *Star v. Rabello*, 625 P.2d 90, 92 (Nev. 1981) (citation

16   omitted).

17   Extreme and outrageous conduct "is that which is 'outside all possible bounds of

18   decency' and is regarded as 'utterly intolerable in a civilized community.'"  *Maduike v. Agency*

19   *Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998) (citations omitted).  This is not such a case.  The court

20   finds no allegations in this case that amount to extreme and outrageous conduct, and Plaintiff has

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

7

1    pointed to no specific evidence to support such a claim.  Thus, summary judgment is appropriate.

2         IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment (#22)

3    is GRANTED.

4         The Clerk of the court shall enter judgment accordingly.

5         IT IS SO ORDERED.

6         DATED this 13th day of January, 2010.

7

8

9         _____

10        LARRY R. HICKS
          UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    8